Commonwealth *v.* Ireland, Appellant.

Argued April 28, 1942.

Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES,
HIRT and KENWORTHEY, JJ.

300

*Charles S. Schermer,* for appellant.

*Abraham Berkowitz,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

The indictment in this case charged that the defendant, John Ireland, on November 8, 1939, (1st count) "did beat, wound and ill-treat" Betty Anderson and Florence Bald, [assault and battery], and (2d count) "unlawfully and maliciously did inflict grievous bodily harm upon the said Betty Anderson and Florence Bald" [aggravated assault and battery].

The testimony showed that the injuries were inflicted by an automobile driven by the defendant which struck the two girls just as they were stepping from a sidewalk into the roadway of a street, with the intention of crossing it.

The jury returned a verdict of guilty with a recommendation of mercy. The court sentenced the defendant to imprisonment in the county prison for not less than four months nor more than two years. Defendant appealed.

The assistant district attorney, who tried the case for the Commonwealth, frankly admitted at the argument on the appeal that errors in the court below required the reversal of the judgment. With this we agree. He contended, however, that a new trial should be granted rather than the entry of a judgment discharging the defendant, as urged by appellant. This is the real point at issue.

The trial judge, in his charge, did not refer to the criminal intent, which is necessary to sustain a prosecution for assault and battery—that it must have been intentional, not accidental or merely negligent. In the ordinary run of assault and battery cases, where the intent of the defendant to inflict the injury complained of is plainly apparent, it is not necessary to lay stress

upon it; but in automobile injuries and similar cases it becomes important, for the intention to commit the assault and battery is the very gist of the offense. If one hits another intentionally and knocks him down, that is a plain case of assault and battery; but if one slips on an icy pavement and in the act of falling unintentionally hits another, thereby knocking him down, that is not an assault and battery, for the intent to hit the other person is wholly lacking. Of course, the criminal intent—the intent to injure—may, in proper cases, be inferred from the circumstances, but they must be such as to warrant the inference. The grossly negligent use of a potentially dangerous instrument like an automobile, in wanton disregard of the safety of others lawfully on the highway, will be sufficient to warrant an inference by the jury of an intent to injure, and justify a conviction of assault and battery: *Com. v. Muska,* 92 Pa. Superior Ct. 121, 123; *Com. v. Raspa,* 138 Pa. Superior Ct. 26, 29, 9 A. 2d 925; *Com. v. Bergen,* 134 Pa. Superior Ct. 62, 68, 4 A. 2d 164; *Com. v. Kalb,* 129 Pa. Superior Ct. 241, 243, 195 A. 428; *Com. v. Rider,* 29 Pa. Superior Ct. 621, 624-5.

So, too, the trial judge totally neglected to charge the jury that, in order to find the defendant guilty of 'aggravated assault and battery', they must also find that the assault and battery, which inflicted the grievous bodily harm proved in this case, was done maliciously. Malice is a necessary constituent of the offense. It must be expressly charged in the indictment—as it was in this case—and the jury must be told that they must find that the assault and battery resulting in grievous bodily harm was done maliciously, in order to convict a defendant of 'aggravated assault and battery'. It is as essential a requisite to a conviction, as 'malice' is in a murder case, or knowledge that the goods were stolen is in a prosecution for receiving stolen goods, knowing that they were stolen. The case is not different in *principle* from any other offense where

malice is a constituent element of its commission. Of course, here again, the jury should be told that in occurrences of this nature, the defendant's malice need not be expressly directed against the party injured, but may be implied from the wilful and wanton operation of an automobile in a manner which manifestly and necessarily imperiled the lives and limbs of other persons lawfully upon the street and showed a wanton disregard for their safety: *Com. v. Raspa,* 138 Pa. Superior Ct. 26, 29, 9 A. 2d 925.

We have gone into the matter thus fully because of the fact that prosecutions for assault and battery and aggravated assault and battery are sometimes resorted to by injured persons to enforce the payment of damages, where recovery in a civil action would be uncertain or impossible, overlooking the fact that the degree of proof necessary for a conviction in a prosecution for assault and battery or aggravated assault and battery is greater than that necessary for a conviction of involuntary manslaughter. For the gist of the latter offense is that the injury resulting in the death must be unintentional; if it is intentional, or malicious, it is felonious homicide: *Com. v. Ochs,* 91 Pa. Superior Ct. 528, 531 (LINN, J.) ; *Com. v. Bergen,* 134 Pa. Superior Ct. 62, 68, 4 A. 2d 164; *Com. v. Coccodralli,* 74 Pa. Superior Ct. 324, 327 (PORTER, J.) ; *Com. v. Beattie,* 93 Pa. Superior Ct. 404, 408 (GAWTHROP, J.). Involuntary manslaughter is the unintentional killing of another person happening in consequence of an unlawful act, not amounting to felony, or in the doing of a lawful act in an unlawful way. The latter may happen when one does an act, otherwise lawful, in a manner so negligent and reckless as to amount to an unlawful act: *Com. v. Aurick,* 342 Pa. 282, 291, 19 A. 2d 920.

The facts of the case as they appear in this record, are as follows: On the evening of November 8, 1939, at about seven o'clock, the defendant was driving his car

northward on Frankford Avenue, Philadelphia, on his way to his home. Frankford Avenue, at the point involved in this case runs in the general direction of north and south. Benner Street enters Frankford Avenue at a right angle on the east. It does not cross the avenue. Duffield Street enters Frankford Avenue on the east, just south of Benner Street, at an acute angle, in such a way as to make a street opening on the east side of Frankford Avenue of about 145 feet[1] from the south line of Duffield Street to the north line of Benner Street, with a small triangle formed by the junction of the north line of Duffield with the south line of Benner. Frankford Avenue is sixty feet wide between curbs, at this point, with double street car tracks in the middle. The neighborhood is not built up. There is a vacant lot at the northeast corner of Benner Street and Frankford Avenue, where the accident occurred. There is an open field opposite on the west side of Frankford Avenue; and the city map shows that a short distance to the south, Frankford Avenue bisects Cedar Hill Cemetery and passes between North Cedar Hill Cemetery and Wissinoming Park. Battersby Street enters Frankford Avenue on the west side at an angle that is almost a continuation of Duffield Street on the east side. There was a street light at the southeast intersection of Duffield and Frankford Avenue and one at the intersection of Battersby and Frankford Avenue. There was no street light at the intersection of Benner and Frankford Avenue. The nearest street light to the point of the accident was 150 to 175 feet distant. There was no sidewalk on Benner Street adjoining the open lot at the corner of Benner and Frankford Avenue, and there was no

---

[1] This distance was given *approximately* by the Commonwealth's witness, Rodd. The assistant district attorney, for some unexplained reason, objected to the defendant showing the distance accurately (Record, 21a).

*marked* crossing for pedestrians from the sidewalk on the east side of Frankford Avenue at Benner Street over to the west side, where it was joined by Battersby Street.

The injured girls were each fourteen years old. Florence Bald lived at 4412 Van Kirk Street, three blocks south of Benner Street and four blocks east of Frankford Avenue; Betty Anderson lived at 4315 Comly Street, one block south of Benner and three blocks east of Frankford Avenue. On the evening in question they were going to a school at Battersby and Levick Streets. Florence Bald called for Betty at her home and they walked west on Comly Street, past a drug store at the corner of Comly and Erdrick Streets, until they came to Duffield. They then went northwestwardly on Duffield Street until they came to Frankford Avenue and then walked on the east side of Frankford Avenue until they came to the north side of Benner Street, where they intended to cross over to Battersby Street. As they stepped into the roadway there they were hit by defendant's car and very badly injured. Betty Anderson had no recollection of what happened after they passed the drug store. Florence Bald testified that she and Betty walked up Duffield Street until they came to the east side of Frankford Avenue, and then proceeded on Frankford Avenue until they got to the north side of Benner Street. She looked there and saw defendant's car at Comly Street, one block south. As she was about to step off the curb into the street she said she saw his car half a block away, and that immediately after she and Betty stepped into the street they were struck by the car. She said she thought she had time to get across. Both Florence Bald and Walter Rodd, testifying for the Commonwealth, said the girls were hit by defendant's car just as they stepped from the curb into the street. No witness testified otherwise.

It is clear that in such circumstances the girls could

not recover in a civil action. Their contributory negligence would prevent it. The point is directly ruled in *Dando v. Brobst,* 318 Pa. 325, 327, 328, 177 A. 831; *Schweitzer v. Scranton Bus Co.,* 344 Pa. 249, 25 A. 2d 156; *Forgioni v. Balaban,* 135 Pa. Superior Ct. 179, 5 A. 2d 398. The principle laid down in *Carroll v. Penna. R. Co.,* 12 W. N. C. 348, applies. The negligence is even greater where the injured party saw the automobile approaching and, nevertheless, stepped into its path. Florence Bald's testimony that the defendant's car was half a block away as she stepped off the curb, must be disregarded as an impossibility, in view of her being hit when her foot reached the roadway. As was said in *Patton v. George et al.,* 284 Pa. 342, 345, 131 A. 245, "The testimony of Mrs. Estell, that the car covered the one hundred and seventy feet before plaintiff could step off the track, must be disregarded as an impossibility"; and in *Bornscheuer v. Consolidated Traction Co.,* 198 Pa. 332, 334, 47 A. 872, "The conclusion is irresistible that the witness was mistaken as to the distance between him and the car when he started to cross the track, and the jury should not have been allowed to believe him." This language, applicable to an action for money damages, is at least equally fitting where one's liberty is involved.

Their contributory negligence is not, however, a *defense* in this prosecution, if the elements of the offenses charged in the indictment were proved: *Hess v. Stiner,* 144 Pa. Superior Ct. 249, 19 A. 2d 560; *Com. v. Stine,* 127 Pa. Superior Ct. 169, 193 A. 344. Nevertheless, it is a circumstance to be considered in determining the guilt of the accused, for if the injuries to these girls resulted from their own heedlessness in stepping off the curb into the street right in the path of an oncoming automobile which they saw approaching, unless some flagrant conduct was shown on his part, it would absolve the driver of that wilful or wanton disregard of the safety of others lawfully on the highway

from which his intent to injure and his malice could be inferred (*Com. v. Muska,* 92 Pa. Superior Ct. 121, 123). See also, *Com. v. Hatch,* 149 Pa. Superior Ct. 289, 27 A. 2d 742, filed this day. The Commonwealth produced no other testimony of conduct of the defendant justifying a reasonable inference of his intent to injure, or of malice. The impact of a car going twenty to twenty-eight miles an hour would of itself be very great, and the fact that the car may have traveled for seventy-five feet after it hit the girls—accepting Rodd's testimony, who was 150 feet distant, coming towards the accident on a motorcycle, rather than the defendant's, who said he stopped within fifteen or twenty feet—is not such a circumstance as to establish his criminal intent or malice: *Com. v. Kalb,* 129 Pa. Superior Ct. 241, 243, 195 A. 428, where the injured man was carried by the defendant's car over 100 feet; *Com. v. Donnelly,* 113 Pa. Superior Ct. 173, 175, 172 A. 190, where the car traveled at least half a square before it was stopped; *Com. v. Ushka,* 130 Pa. Superior Ct. 600, 606, 198 A. 465, where the defendant's car traveled 130 feet after the collision.

The defendant's story was that he was driving north on Frankford Avenue at the rate of twenty to twenty-five miles an hour. When he came to the intersection of Duffield Street, he slowed down to fifteen miles, and looked down Duffield Street to see if anything was approaching. Seeing nothing, he continued at fifteen miles until he passed Duffield Street, and had just increased his speed to twenty-five to twenty-eight miles, when he suddenly saw two girls in front of him, not ten feet away. He tried to avoid hitting them by turning to the left, but did not succeed in doing so. If he had seen the girls walking along the east side of Frankford Avenue he would not have been informed of their intention to cross the street there—there was no sidewalk on the north side of Benner Street—nothing but the sidewalk on Frankford Avenue.

The trial judge, in effect, directed a verdict of guilty. He told the jury that if they believed the *defendant's* testimony, they should find him guilty. He refused to charge the jury on the subject of the defendant's intent, and, as to the count for aggravated assault and battery, that the injury must be inflicted unlawfully and maliciously. He told the jury that if the defendant was grossly negligent, they must convict, and then instructed them that if they believed the defendant's testimony, he *was* grossly negligent. In short, his approach to the case was wrong.

In our opinion, the defendant's demurrer to the evidence, at the close of the Commonwealth's case, should have been sustained; and as his own evidence did not furnish any additional support to the Commonwealth's case, his point for binding instructions, directing a verdict of not guilty, should have been affirmed.

The first, second, fourth, fifth, seventh and ninth assignments of error are sustained. The judgment is reversed and the defendant is discharged.